IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANGELA P., | * |
| Plaintiff, | * |
| vs. | *  Civil Action No. ADC-23-0355 |
| KILOLO KIJAKAZI,<br>Acting Commissioner,<br>Social Security Administration | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On February 8, 2023, Angela P. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). ECF No. 1 ("the Complaint"). After considering the record in the case, (ECF No. 9) and the parties' briefs, (ECF Nos. 12, 14) the Court finds no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Plaintiff's petition (ECF No. 12) is GRANTED, the SSA's decision is REVERSED, and the case is REMANDED to the SSA for further analysis in accordance with this Opinion.

### PROCEDURAL HISTORY

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on August 1, 2019, alleging a disability onset of August 1, 2019. ECF No. 9-3 at 16. Plaintiff's claims were denied initially and on reconsideration. *Id.* On March 8, 2022, an Administrative Law Judge ("ALJ") held a telephone hearing due to the extraordinary circumstance presented by the COVID-19 pandemic. *Id.* Following the hearing, on June 6, 2022, the ALJ determined that Plaintiff

1

was not disabled within the meaning of the Social Security Act during the relevant time frame. ECF No. 9-3 at 13. The Appeals Council denied Plaintiff's request for review (ECF No. 9-3 at 2), so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

### STANDARD OF REVIEW

This Court may review the SSA's denial of benefits under 42 U.S.C. § 405(g). *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court's review of an SSA decision is deferential: "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). The issue before the reviewing Court is whether the ALJ's finding of nondisability is supported by substantial evidence and based upon current legal standards. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citations omitted). In a substantial evidence review, the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the Court must determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that he is under disability within the meaning of the Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step sequential evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. § 416.920. *See Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). *See* 20 C.F.R. §416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments]" that is either expected to result in death or to last for a continuous twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If not, the claimant is not disabled. At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the

presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is considered disabled, regardless of the claimant's age, education, and work experience. *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R.§ 416.920(a)(4)(iv). Claimant's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 416.945(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 416.929(b). Once the claimant makes that threshold showing, the ALJ must then evaluate the extent to which the symptoms limit the claimant's capacity to work. *Id.* § 416.929(c)(1). At this second stage, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements by the claimant. *Id.* § 416.929(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. *See generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). To assess credibility, the ALJ should consider the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *3. However, the ALJ may not "disregard an individual's statements about the intensity, persistence,

and limiting effects of symptoms solely because the objective medical evidence does not substantiate them." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (citations omitted)). Requiring objective medical evidence to support a claimant's subjective evidence of pain "improperly increase[s] [a claimant's] burden of proof." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. § 416.920(a)(4)(iv). If so, the claimant is not disabled. Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. The claimant has the burden of proof during steps one through four of the evaluation. *See Radford*, 734 F.3d at 291. However, at step five, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC, and (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See Hancock*, 667 F.3d at 472–73. If the claimant can perform other work that exists in significant numbers in the national economy, then he is not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot perform other work, he is disabled.

## ALJ DETERMINATION

The ALJ here performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity from August 1, 2019, the application date. ECF No. 9-3 at 18. At step two, the ALJ found that Plaintiff had severe impairments of obesity, diabetes mellitus type 2, peripheral neuropathy, rheumatoid arthritis, schizoaffective disorder bipolar type, anxiety disorder, major depressive disorder, post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), and substance abuse disorder. *Id.* at 19. The ALJ found

that these medically determinable impairments "significantly limit the ability to perform basic work activities as required by SSR 85–28." *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 19–29. The ALJ then determined that Plaintiff had the RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can frequently reach overhead bilaterally and frequently handle bilaterally. She can never be exposed to extreme cold or wetness. She can never be exposed to hazards such as dangerous moving machinery and unprotected heights. She can understand, remember and carry out simple instructions and make simple work related decisions. She can work at a consistent pace throughout the workday, but not at a production rate pace such as on an assembly line or work involving monthly or hourly quotas. She can tolerate occasional interaction with coworkers, supervisors, and the public. She can tolerate occasional changes in the work setting.

*Id.* at 23.

At step four, the ALJ found that Plaintiff had "no past relevant work." *Id.* at 29. However, the ALJ further concluded that, in "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* The ALJ also found that, based on the testimony of the vocational expert at the hearing, Plaintiff would be able to perform the requirements of representative occupations such as: housekeeping cleaner (DOT[1] Code 323.687-014, with 163,000 such jobs nationally); marker (DOT code 209.587-034, with 129,000 such jobs national); router

---

[1] "DOT" stands for the Dictionary of Occupational Titles. As the Fourth Circuit has explained, "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ..., are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

(DOT Code 222.587-038, with 35,000 such jobs nationally); document preparer (DOT Code 249.587-018, with 17,000 such jobs nationally); surveillance system monitor (DOT Code 379.367-010, with 10,000 such jobs nationally); and tube operator (DOT Code 239.687-014, with 2,000 such jobs nationally). Thus, the ALJ concluded that Plaintiff was not disabled under the Act. *Id.* at 30–31.

## DISCUSSION

Plaintiff raises one overarching argument on appeal: that the ALJ's decision was "not supported by substantial evidence because the ALJ improperly considered Plaintiff's noncompliance with her medication and treatment without considering the impact of her poverty and the nature of her mental health impairments." ECF No. 12 at 1. In response, Defendant asserts that the ALJ "reasonably considered the reasons Plaintiff gave for her medication non-compliance," by considering Plaintiff's statement that she "'hate[s]' to take her medication because she 'just get[s] so much done' during manic states.'" ECF No. 14 at 1. Defendant also contends that the ALJ appropriately noted Plaintiff's "'significant medical noncompliance' when assessing that the medical records do not support the severity of the symptoms alleged," and that Plaintiff's mental health was stable when she was compliant with medication. *Id.* I address Plaintiff's argument below.

**An ALJ's Duty to Develop the Record**

Social Security Ruling 16-3p provides, in relevant part, that:

[I[f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis *without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.* We may need to contact the individual regarding the lack of treatment or, *at*

7

*an administrative proceeding, ask why he or she has not complied* with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017) (emphasis added).

In considering the individual's treatment history, the Commissioner may consider, inter alia, whether "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services" or whether [d]ue to a mental impairment (for example, individuals with mental impairments that affect judgment, reality testing, or orientation), an individual may not be aware that he or she has a disorder that requires treatment." *Id.* at *9–10.

As for the ability to afford treatment, the Fourth Circuit has held, "[a] claimant may not be penalized for failing to seek treatment that she cannot afford; '[i]t flies in the face of the patent purposes of Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)); *see also Michael C. v. Kijakazi*, No. 22-0029-BAH, 2022 WL 13945281, at *4 (D.Md. Oct. 24 2022). "However, '[a]n absence of evidence that a claimant sought low-cost or free care may warrant discrediting his excuse that he could not afford treatment.'"

This Court has held that "case law clearly imposes on an ALJ a duty to develop the record, rather than rely on only the evidence submitted by the claimant, *even if the claimant is represented.*" *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 274 (D.Md. 2003) (emphasis in original). An ALJ "has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record and cannot rely on the evidence submitted by the claimant when that evidence is inadequate." *Id.* (quoting *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).

As in the present case, an ALJ's duty to develop the record is implicated when a claimant's poverty may have contributed to noncompliance with a treatment regime. This Court has held that

8

"an ALJ is required to *develop the record as to whether a claimant's lack of resources contributed to the failure to seek or maintain care* when the ALJ bases any or part of a denial of disability benefits on a failure to seek or maintain care." *Michael C.*, 2022 WL 13945281, at *5 (emphasis added); *see also Fleming v. Barnhart*, 284 F. Supp. 2d 256, 274 (D.Md. 2003) ("[To deny benefits] based on noncompliance, in full or in part, the Commissioner must conduct a particularized inquiry and develop a record establishing by substantial evidence that the claimant's impairment is reasonably remediable…and that the claimant lacks good cause for failing to follow a prescribed treatment program.")

**The ALJ Improperly Considered Plaintiff's Noncompliance with Medication and Treatment**

Here, Plaintiff argues that the ALJ's decision was not supported by substantial evidence because the ALJ improperly considered Plaintiff's noncompliance with her medication and treatment without considering the impact of her poverty and the nature of her mental health impairments. ECF No. 12 at 1. As discussed above, in order to deny benefits based on noncompliance, in full or in part, an ALJ must develop the record and establish by substantial evidence that 1) the claimant's impairment is reasonably remediable, and 2) that the claimant lacks good cause for failing to follow a prescribed treatment program. *See Fleming*, 284 F. Supp. 2d at 274 (emphasis added).

In the present case, the ALJ clearly relied, at least in part, on Plaintiff's treatment noncompliance in determining that Plaintiff was not disabled. In evaluating the Plaintiff's ability to concentrate, persist, and maintain pace, the ALJ noted that

> Mental status exam notes from January 2020 show that the claimant was disheveled and anxious. During a hospital visit on May 24, 2021, the claimant reported that she was "struggling to make appointments" and "largely noncompliant" with her psychiatric medications. *Overall, the record shows a pattern of medication noncompliance.*

ECF No. 9-3 at 22 (emphasis added internal citations removed).

The ALJ further stated that "[t]he claimant's medical records confirm some treatment for her impairments, but do not support the severity of symptoms alleged. Notably, the records show significant medication noncompliance." ECF No. 9-3 at 24. The ALJ highlighted numerous points in the record demonstrating Plaintiff's noncompliance, including a July 2020 primary care note in which Plaintiff "admitted to poor medication compliance during her times of depression" and a December 2020 emergency room visit record in which Plaintiff's "blood sugar was over 400 and she admitted to noncompliance with her insulin." ECF No. 9-3 at 25. The ALJ also stated that "[e]emergency room notes dated January 27, 2021 show that the claimant had 'run out of all of her medications and has not been taking her insulin or diabetic medications for several weeks." *Id.*

The ALJ continued that

> The claimant returned to the emergency room on May 24, 2021 and reported feeling depressed with some thought of suicidal ideation, but no plan. She further reported that...[she was not] compliant with her insulin. Furthermore, she reported that she was prescribed risperidone, Lamictal, Vistaril, and Effexor, but was 'largely noncompliant with them of late.'"

*Id.* at 26.

Despite underscoring Plaintiff's noncompliance, the ALJ made no inquires during the administrative hearing as to why Plaintiff was noncompliant, and in particular, did not inquire about Plaintiff's ability to afford and/or access her prescribed treatment. *See* ECF 9-3 at 39–59. However, the record indicates that a lack of resources may have contributed to Plaintiff's noncompliance. The ALJ notes twice in the decision that in 2022, Plaintiff lived with 10 other individuals at home. *See* ECF No. 9-3 at 21, 26. Plaintiff also reported that her sons provide assistance paying bills, completing daily activities, and getting groceries. ECF No. 12 at 4. Plaintiff also contended that she did not always have a working cell phone, and that through October 2020

10

was living with her mother-in-law in a trailer that had no running water. *Id.* Here, by failing to inquire as to whether Plaintiff's lack of resources contributed to her noncompliance, the ALJ did not meet her duty to "develop the record as to whether a claimant's lack of resources contributed to the failure to seek or maintain care[.]" *Michael C.*, 2022 WL 13945281, at *5. Remand is warranted.

The ALJ also improperly considered Plaintiff's noncompliance with her medication and treatment without considering the nature of her mental health impairments. The ALJ found that "with regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation," but that "by her own admission, '[Plaintiff's] symptoms are mostly stable when she is on medication.'" ECF No. 9-3 at 21. In *Latonya W. v. Kijakazi*, 2021 WL 4170428, at *4 (D.Md. Sept. 14, 2021) (emphasis added) this Court addressed the duty that an ALJ is under when a claimant has such a limitation and has been found to be noncompliant with a medical treatment regime:

> The ALJ's findings as to Plaintiff's moderate inability to concentrate, persist, or maintain pace undermine his implication that Plaintiff is capable of working so long as she takes her medications. At a bare minimum, *the two findings require the ALJ to build some logical connection between the notion that Plaintiff experiences difficulty persisting but can manage her mental health by regularly taking her prescribed medications*, the effectiveness of which depends upon sustained and consistent compliance. Thus, while the ALJ apparently found Plaintiff's medication compliance relevant, how it might be relevant in the context of her limited ability to concentrate, persist, or maintain pace is left unexplained.

Here, as in *Latonya W.*, the ALJ failed to elucidate why it is reasonable for Plaintiff to be taking her anti-psychotic medications consistently—and thus be able to work—when the ALJ found that Plaintiff has a moderate inability to persist. As this Court noted in *Latonya W.*, the ability to take one's psychiatric medicines as prescribed requires sustained and consistent compliance. *See id.* The ALJ failed to explain how Plaintiff's limited ability to concentrate, persist,

or maintain pace interacts with her ability to comply with a treatment regime. Further, the ALJ's error is harmful. The record reflects that Plaintiff experiences visual hallucinations when she is not on her antipsychotic medications. ECF No. 9-3 at 27. However, the ALJ's RFC does not provide for any time off-task limitation and does not include limitations to account for these psychotic symptoms when Plaintiff is not properly medicated. *See* ECF No. 9-3. As the Fourth Circuit has explained, "[b]ecause [the Court] [is] left to guess about how the ALJ arrived at his conclusions on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary." *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

## CONCLUSION

In summation, the Court finds that the ALJ failed to properly evaluate the evidence on record and did not provide substantial evidence to support the finding that Plaintiff was "not disabled" within the meaning of the Act. Therefore, based on the foregoing and pursuant to 42 U.S.C. § 405(g), Plaintiff's petition (ECF No. 12) is GRANTED and the decision of the SSA is REVERSED. This case is REMANDED for further proceedings in accordance with this opinion.

Date: 14 December 2023

A. David Copperthite
United States Magistrate Judge

12